TIMOTHY COURCHAINE
United States Attorney
District of Arizona

GLENN B. McCORMICK
Arizona State Bar No. 013328
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: glenn.mccormick@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br>Carlos Abraham Uriarte-Oropeza,<br><br>                    Defendant. | **CR-22-01588-PHX-DJH (JZB)**<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT** |

The United States agrees with some of the defendant's objections to the Presentence Investigation Report (PSR) Base Level determination and Specific Offense Characteristics, and not others. The United States agrees with the defendant's objections to the PSR regarding Acceptance of Responsibility.

**A.  PARAGRAPH 21, THE BASE OFFENSE LEVEL CALCULATION[1]**

**1.  The United States Disagrees with the PSR Base Offense Level Calculation**

In determining the Base Offense Level to be 26, the PSR finds that "the defendant purchased three semiautomatic firearms containing 30-round magazines[,]" "he was an unlawful user of a controlled substance during the time he committed the offense,

---

[1] The United States concurs with the PSR that the 2024 Guidelines Manual applies (PSR, p. 7) because the calculation is not different from the 2016 USSG Manual that was in effect at the time of the criminal activity. USSG 1B1.11(b)(1).

[and] is considered a prohibited possessor," he is accountable for three firearms, and "he had knowledge or reason to believe the firearm would be transported out of the United States." The United States submits that using the PSR findings, the United States Sentencing Guidelines (USSG) Base Offense Level would be 20, not 26, because the adjustments for the number of firearms involved pursuant to USSG § 2K2.1(b)(1)(A) and knowing the firearms were being transported to Mexico pursuant to § 2K2.1(b)(6)(A) are Specific Offense Characteristics and technically not part of the Base Offence Level calculation. The United States agrees that if the § 2K2.1(b)(6)(A) Specific Offense Characteristics were applicable, the combined Base Offense Level and Specific Offense Characteristics would equal 26. However, as will be discussed below, the United States does not agree with this calculation, however it may be characterized.

### 2. The Applicable Base Offense Level is 12

For the Base Offense Level of 20 to apply pursuant to the reasoning of the PSR, "the offense must have involved a [] semiautomatic firearm that is capable of accepting a large capacity magazine … and [] the defendant [must have been] a prohibited person at the time the defendant committed the instant offense." USSG § 2K2.1(a)(4)(B)(i)(I) and (ii)(I). Therefore, two elements must be met for Base Offense Level 20 to apply.

### a. The Large Capacity Magazine Finding is Not Applicable

Paragraph 21 of the PSR states: "The defendant purchased three semiautomatic firearms containing 30-round magazines." The PSR correctly determines that a firearm "capable of accepting" a 30-round magazine meets this first element of the Base Offense Level determination, subject to how "capable of accepting" is defined. "[C]apable of accepting a large capacity magazine [] means … (A) the firearm had attached to it a magazine … that could accept more than 15 rounds of ammunition; or (B) a magazine … that could accept more than 15 rounds of ammunition was in close proximity to the firearm." 2K2.1, Note 2. However, the firearms purchased by Uriarte were never recovered and the purchase receipts do not indicate that the firearms were new or that magazines of

any sort, much less a 30-round magazine was sold with the firearm. The United States lacks evidence to prove a 15-plus round magazine was with or near the firearms at any time when they were in Uriarte's possession. Therefore, the United States lacks sufficient evidence to support the application of 2K2.1(a)(4)(B)(i)(I) and the Base Offense Level of 20.

Further, the vast majority of the 36 firearms associated with the 10 defendants in the overall investigation[2] were the same or very similar to the firearms purchased by Uriarte. Uriarte is the tenth of the ten defendants in the overall investigation to resolve the case by plea agreement and be sentenced. None of the other nine defendants were assessed with a finding of "large capacity magazines." Although two similar firearms with large capacity magazines were seized from Jaime Gaxiola (CR22-01145-02-PHX-DJH (JZB)), the PSR writer and parties missed that error in the calculation and Gaxiola was assessed a Base Offense Level of 12.  Like all the other defendants indicted and sentenced as part of this investigation, the applicable Base Offense Level is 12, pursuant to USSG § 2K2.1(a)(7).

### b.  The Prohibited Person Finding is Applicable

The United States agrees with the PSR finding that the defendant was a prohibited possessor because he was a habitual drug user at the time he possessed the firearms. The defendant objects to the PSR finding that he was a prohibited person at the time of the offense. The PSR correctly describes available information regarding the defendant's history of drug abuse.  The PSR states,

> "When [Uriarte] was interviewed by agents, he reported he was a drug user. He reported during his pretrial interview, he used marijuana daily and during his presentence interview he reported he used up to three times per week. He tested positive for marijuana. Furthermore, he was diagnosed with severe cannabis disorder. As he was an unlawful user of a controlled substance during the time he committed the offense, he is considered a prohibited

---

[2] The overall investigation is described more fully in the United State's Sentencing Memorandum which shall be filed contemporaneously with this pleading.

possessor pursuant to 18 U.S.C. § 922(g)(3)." PSR, p. 7. "[T]o sustain a conviction for § 922(g)(3), the government must prove … that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *United States v. Purdy*, 264 F.3d 809, 812-13 (9th Cir. 2001). Purdy challenged whether the language of § 922(g)(3) put him on notice that his use of drugs and possession of a firearm adequately put him on notice that his conduct was illegal. *Purdy* at 811. In that case, the evidence established that "Purdy used illegal drugs [] on a regular basis for years, and that he had smoked methamphetamine and marijuana contemporaneously with his possession of a firearm. [T]his evidence establishes that Purdy's drug use was sufficiently consistent, 'prolonged,' and close in time to his gun possession to put him on notice that he qualified as an unlawful user of drugs under § 922(g)(3)." The defendant's history of drug use is similar.

In the present case, the defendant self-reported his longstanding marijuana abuse history. He has not presented any argument that there was a lapse in his use of marijuana at or around the time of his firearms purchases, only that there is no evidence that he was under the influence at or around the time of the criminal conduct. The former is sufficient as, "being under the influence" is not required to violate § 922(g)(3). Taking his statements to law enforcement during the investigation, to Pre Trial Services preceding his initial appearance, and to United States Probation during his presentence interview at face value, the defendant was a user of drugs contemporaneously with his possession of firearms. Only his objection to the PSR suggests otherwise. While the defendant's argument is convenient when facing sentencing, it does not logically follow his consistent prior statements.

The Ninth Circuit has hinted at potentially vague circumstances impacting the application of § 922(g)(3). In *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Circuit 1977), the defendant, a heroin user, challenged the definition of "unlawful user." Finding the statute not vague as to Ocegueda as a heroin user, a drug lacking any medical use,[3] in

---

[3] Heroin is a Schedule I controlled Substance under the Controlled Substances Act,

dicta the court noted that heroin is not the type of drug that may be used by laymen in some circumstances, but not in others." *Id*.  In the present case, the defendant's drug of choice is marijuana, also a Schedule I controlled substance.[4] Marijuana is not legal federally.[5] However, marijuana was legal medicinally with a doctor's prescription pursuant to Arizona state law when the defendant possessed firearms in 2017.[6] The defendant has not presented an argument that he had an Arizona state medical prescription for marijuana when he possessed the firearms, even assuming the conflict of law could overcome the illegality of marijuana federally. Therefore, the defendant's objection to the second element of USSG § 2K2.1(a)(4)(B)(i)(I) and (ii)(I) must be overruled.

### c.  The Evidence Does Not Satisfy Both Elements

Because both elements of USSG § 2K2.1(a)(4)(B)(i)(I) and (ii)(I) must be proved to apply the Base Offense Level of 20, and the evidence does not support the first element requiring that "the offense must have involved a [] semiautomatic firearm that is capable of accepting a large capacity magazine," the Base Offense Level should be 12, not 20. USSG § 2K2.1(a)(7).

### B.  SPECIFIC OFFENSE CHARACTERISTICS

### 1.  The Defendant Did Not Know the Guns Would be Transported to Mexico

---

meaning it has no currently accepted medical use and a high potential for abuse and physical dependence. Title 21, U.S.C. § 812.

[4] Like heroin, marijuana is currently a Schedule I controlled substance pursuant to the Controlled Substances Act and was so scheduled at the time the defendant was an abuser of marijuana and in possession of firearms. Title 21, U.S.C. § 812. However, the process to consider rescheduling marijuana from Schedule I to Schedule III is underway. Title 21, U.S.C. § 811. A notice of proposed rulemaking to reschedule marijuana from Schedule I to Schedule III (substances with currently accepted medical use, less potential for abuse than substances in Schedules I and II, and abuse may lead to moderate or low physical dependence) was published by the Administrator of the Drug Enforcement Administration on May 21, 2024, and is pending completion of formal rulemaking hearings.

[5] Title 21 § 844.

[6] Medical Marijuana became legal pursuant to Arizona law upon the passage of Proposition 203 in 2010. Marijuana did not become legal recreationally pursuant to Arizona law until the passage of Proposition 207 in 2020.

Paragraph 21 of the defendant's Draft PSR applies Specific Offense Characteristic 2K2.1(b)(6)(A), adding 4 levels for knowing the firearms were going to Mexico. Paragraph 12 of the PSR also indicates the defendant had knowledge that the firearms "were to be transported to Mexico." However, the investigation does not support the finding or the Specific Offense Characteristic. Specifically, the relevant ATF Report of Investigation (ROI) indicates:

> "Uriarte said that after the third purchase he started feeling strange. Uriarte asked Gaxiola [another defendant caught up in the investigation who had asked Uriarte to make the purchases] about the firearms. Gaxiola told Uriarte that the firearms were for a friend, and some were for him. Uriarte said if he had known what was going on he would not have purchased the firearms. He said he knew it was illegal to export firearms to Mexico. Uriarte also told agents he did not have a Federal Firearms License or an Export License. Uriarte said he and Gaxiola would communicate via Facebook or in person."

The defendant stopped making purchases after he became suspicious of the arrangement and said he would not have participated if he knew what was going on. His statement that he knew it was illegal to export firearms to Mexico should not be read to mean he knew the three firearms he purchased for Gaxiola were going to Mexico, at the time he purchased them. Instead, that statement supports the defendant's statement that if he knew what was going on, he would not have purchased the firearms. Notably, the last three sentences of the paragraph quoted from the ROI, including the one indicating knowledge that exporting firearms to Mexico is illegal, are a list of factual statements relevant to the investigation, but are not admissions to intentionally or knowingly involving himself with the export of firearms to Mexico. Therefore, the evidence in the investigation does not support the application of the USSG, § 2K2.1(b)(6)(A) Specific Offense Characteristic and it should not be applied to the USSG offense calculation.

### a.  PSR Paragraph 12 Should be Deleted

In addition to the evidence not supporting a finding that the defendant had knowledge that the firearms were to be transported to Mexico, Paragraph 12 should be deleted from the PSR for additional reasons.  Paragraph 12 states in total:

> "The overall investigation revealed, [the defendant] operated under Gaxiola, who was known to work under another individual who worked with the cartel in Mexico, known for their criminal activity. The defendant received money and direction from Gaxiola to unlawfully purchase firearms within the United States, with knowledge they were to be transported to Mexico."

The overall investigation did establish that Gaxiola was working under another person in Mexico.  The investigation did not establish that the defendant knew that fact. Further, while other defendants in the overall investigation alluded to rumors that the person Gaxiola was working under was providing the guns to a cartel, there was no direct or circumstantial evidence discovered to prove that as fact. Those rumors were based on suspicions that may be logical but were not established to a sufficient degree of certainty to state as a fact in the PSR. The balance of the information in Paragraph 12 is already contained in Paragraph 11, making the entirety of Paragraph 12 unnecessary.

### 2.  The Defendant Should be Held Accountable for Three Firearms

The PSR correctly adjusts the USSG Offense Level calculation upward by two levels for USSG § 2K2.1(b)(1)(A) Specific Offense Characteristic because the defendant conspired with Gaxiola to make false statements in the purchase of three firearms.

### C. ADJUSTMENTS

### 1.  The Defendant was not a Minor Role Participant

The defendant travelled with Gaxiola to gun stores and used money provided by Gaxiola to buy specific models of firearms as directed by Gaxiola. Further, the defendant completed the Alcohol Tobacco and Firearms (ATF) form 4473 for each transaction, providing false information on each of those documents in violation of the law. Gaxiola

told the defendant that the firearms were for a friend and himself.  The defendant was not aware of the greater conspiracy, including the many other straw buyers involved, or the fact that the guns were going to Mexico.

The evidence in the investigation did not establish that the defendant knew of the greater conspiracy involving other "straw buyers."  The defendant is only known to be familiar with Gaxiola's involvement with the defendant. Indeed, the defendant was not the only "straw buyer" Gaxiola conspired with to acquire firearms. Gaxiola was determined to be a manager or supervisor (but not a leader or organizer) and adjusted upward three levels pursuant to USSG § 3B1.1(b). Gaxiola was also held accountable for approximately 30 firearms and adjusted upward by six levels, pursuant to USSG § 2K2.1(b)(1)(C).

The defendant argues for a minor role adjustment pursuant to language in USSG § 3B1.2(b), Notes 3(A) and (C).  "A defendant who is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline." USSG § 3B1.2(b), Note 3(A). Although the defendant is only responsible for his personal conduct in the offense, the "criminal activity" charged is simply agreeing with another to Make False Statements in Acquisition of Firearms. The defendant made false statements to acquire the firearms after agreeing with Gaxiola to do so for payment.  The defendant was not charged with trafficking in firearms to Mexico to which his conduct may in fact be only a "limited function in the "criminal activity" and qualify for a minor role adjustment.  As charged, the defendant is responsible for all elements of the conspiracy, as well as the underlying offense he agreed to commit. That does not qualify as a "limited function in the criminal activity." The defendant's function was to complete all elements of the criminal activity.

The defendant argues that he should be considered for an adjustment under this guideline because "he [did] not have proprietary interest in the criminal activity [and was] only paid to perform certain tasks." USSG § 3B1.2(b), Note (C).  To the contrary, the tasks

the defendant committed were the crime, not part of it, and successfully completing those tasks was required to receive payment. More serious allegations of trafficking in firearms and or smuggling them to Mexico are not charged. It has not been alleged in the indictment that the firearms were to be resold for a proprietary profit. There is no greater proprietary interest associated with the charged offense.   Therefore, the defendant is not a minor participant and the PSR correctly does not award a downward adjustment pursuant to USSG  § 3B1.2(b).

### 2.  Obstruction of Justice

The PSR correctly adjusts the Offense Level upward two levels pursuant to USSG § 3C1.1, Note 4(E) because the defendant absconded from Pre Trial Supervision and failed to appear for court hearings.

### 3.  Acceptance of Responsibility

The United States agrees with the defendant's arguments regarding Acceptance of Responsibility.   "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." This is such a case. In addition to the arguments presented by the defendant on this adjustment, the defendant has been subject to other proceedings that bear upon his culpability for absconding and serve to mitigate that culpability.

### D.     CONCLUSION

The United States submits that the applicable USSG calculation should be as follows:

Base Offense Level  2K2.1(a)(7)                                    12

Specific Offense Characteristics

                      2K2.1(b)(1)(A) (3 firearms)              +2

Adjustments

|  |  |
|---|---|
| 3C1.1 (Obstruction) | +2 |
| 3E1.1(a) and (b) Acceptance | -3 |
| Total Offense Level | 13 |
| Criminal History Category | I |
| USSG Range | (12-18 months) |

Respectfully submitted this 28th day of April, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Glenn B. McCormick*
GLENN B. McCORMICK
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>April 28, 2025</u>, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Eugene Marquez
Counsel for Carlos Abraham Uriarte-Oropeza

<u>s/Glenn B. McCormick</u>
U.S. Attorney's Office